IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

JOHN SCOTT TURBEVILLE            )
                                 )
v.                               )        No. 1:12-0061
                                 )
CAROLYN W. COLVIN,               )
          Acting Commissioner of )
          Social Security[1]     )


To: The Honorable John T. Nixon, Senior District Judge


## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) should be DENIED.


## I. INTRODUCTION

In May 2008, the plaintiff protectively filed for DIB, alleging a disability onset date of May 29, 2006, due to herniated discs in his back and neck; arthritis in his knees, back, and neck; a

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as the defendant in this case.

hole in his esophagus; a kidney cyst; "missing parts of knees;" a hernia operation; and pain in his hip. (Tr. 23, 122-28, 134, 139.) His application was denied initially and upon reconsideration. (Tr. 62-65, 67-69.) On June 4, 2010, the plaintiff appeared and testified at a hearing before Administrative Law Judge William Churchill ("ALJ") (tr. 35-58), and on August 24, 2010, the ALJ entered an unfavorable decision. (Tr. 23-31.) On March 20, 2012, the Appeals Council denied the plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 6-10.)

## II. BACKGROUND

The plaintiff was born on June 22, 1959, and he was 46 years old as of his alleged disability onset date. (Tr. 122.) He completed two years of college and has worked as a manager for a landscaping company, a fork lift operator, a bank manager, a real estate agent, a wholesaler, and a paralegal. (Tr. 40-42, 130-33, 140-41, 156-63.)

### A. Chronological Background: Procedural Developments and Medical Records

The plaintiff received treatment from Dr. Zandra Petway from January 2004 until February 2005 for a variety of conditions including pain in his back, neck, right knee, shoulder, and chest. (Tr. 188-229.) On January 5, 2004, he complained of right knee pain that was a six out of ten on the pain scale with swelling, limited range of motion, and "grinding and popping." (Tr. 226.) He returned on June 21, 2004, reporting that he had undergone right knee surgery in February 2004 and that his left knee was hurting as well. (Tr. 221.) Physical examination revealed diffuse edema in his right knee with no crepitus or tenderness to palpation, and he was treated with an injection. *Id.*

On November 11, 2004, the plaintiff presented with chest pain, shoulder pain, back pain, left knee pain, shortness of breath, dizzy spells, and heart burn. (Tr. 215.) He said that his chest pain did not radiate but was like "muscle pain that never goes away," and he reported having a history of gastroesophageal reflux disease ("GERD"). *Id.* Upon physical examination, the plaintiff had pain with palpation above his left patella but normal range of motion in his neck with intact reflexes, gait, and coordination. (Tr. 216.) He continued to present to Dr. Petway with chest pain from November 2004 until February 2005. (Tr. 188, 192, 202, 209-10.) In December 2004, he reported that a riding lawnmower had fallen on his chest about three months earlier. (Tr. 202.) A chest x-ray, CT scan, and treadmill stress test were within normal limits, and Dr. Petway variously diagnosed "chest discomfort, bruised sternum," "chest wall musculoskeletal pain," and GERD. (Tr. 192, 194, 202-04, 209-10.)

On July 5, 2005, the plaintiff underwent a lumbar spine x-ray, which revealed "spondylitic changes without fracture or subluxation." (Tr. 251.) On August 31, 2005, a renal ultrasound showed a 3 centimeter renal cyst on his left kidney. (Tr. 248.) When the plaintiff presented to Dr. Scott Jobe in October 2005 for a sprained ankle and poison ivy, Dr. Jobe diagnosed him with low back pain, neck pain, and a renal cyst. (Tr. 233.)

On March 27, 2006, the plaintiff presented to Dr. Chris Peterson with neck and back pain. (Tr. 256.) The plaintiff reported that his pain had started more than two years before after repeated automobile accidents and had since worsened. *Id.* On exam, he demonstrated decreased range of motion in his neck, decreased flexion in the low back, negative straight leg raises, no tenderness to palpation, and good sensation throughout. *Id.* Dr. Peterson ordered MRIs of the plaintiff's spine, which were taken on April 10, 2006. (Tr. 239-45.) The lumbar spine MRI showed a "[m]ild

component of diffusely bulging annulus at L3-4, resulting in borderline relative spinal stenosis" and a "[m]ild component of diffusely bulging annulus at LS-SI." (Tr. 240-41.) The thoracic spine MRI showed "[m]ultiple levels of bulging annulus ranging from minimal to mild in extent" (tr. 242-43), and the cervical spine MRI showed a "mild component of degenerative disc disease at multiple levels." (Tr. 244-45.) None of the MRIs showed thecal sac compromise or nerve root displacement. (Tr. 240-45.) During an examination on May 31, 2006, Dr. Peterson observed that the plaintiff continued to have back pain with ambulation and movement of his upper extremities and that the pain increased with flexion, extension, and rotation of the neck. (Tr. 255.) Dr. Peterson diagnosed cervicalgia, back pain, reflux, and depression. *Id.*

On August 27, 2008, the plaintiff presented to Dr. Colin Looney at the Franklin Bone and Joint Clinic complaining of low back and left hip pain from automobile accidents and sports injuries. (Tr. 261-65.) The plaintiff described the pain as "constant and sharp" and a nine out of ten on the pain scale. (Tr. 261.) Physical examination of his back was essentially negative, with no tenderness and negative straight leg raises. (Tr. 262.) Examination of his hip revealed "a negative hip dial test," "[a] mildly positive anterior impingement sign and a posterior impingement sign," "[l]oss of internal rotation on examination but no significant pain with internal rotation in the groin," and "significant" tenderness over the trochanteric region. *Id.* An x-ray of the left hip revealed "severe left hip osteoarthrosis." *Id.* Dr. Looney diagnosed the plaintiff with "[a]symptomatic left hip degenerative joint disease" and "[s]ymptomatic left hip trochanteric bursitis;" administered a steroid injection, which he observed "almost entirely relieved" the plaintiff's symptoms; and scheduled a followup visit for one year later. (Tr. 262-63.) Dr. Looney noted that he anticipated the plaintiff would "need a total hip replacement in regards to the severity of the arthritis in the left hip." (Tr. 263.)

4

The plaintiff returned to Dr. Jobe in October 2008, September 2009, January 2010, and March 2010, with complaints including GERD, palpitations, heartburn, arthralgias, anxiety, depression, elbow pain, and hip pain. (Tr. 280-83.) During these visits, Dr. Jobe diagnosed hypertension, depression, osteoarthritis, elbow bursitis, atrial fibrillation, and carpal tunnel syndrome. *Id.* The plaintiff was also treated during this time by Dr. John Maloof, a cardiologist, for palpitations and tachycardia. (Tr. 270-79.) Physical examinations performed by Dr. Maloof revealed no musculoskeletal abnormalities, with normal muscle strength and tone, stable gait and station, and no abnormalities in the back. (Tr. 271, 273, 275, 277, 279.)

### B. Hearing Testimony

At the hearing on June 4, 2010, the plaintiff was represented by counsel, and the plaintiff and Calvin Turner, a vocational expert ("VE"), testified. (Tr. 35-58.) The plaintiff testified that he completed two years of post high school education, is married, and lives with his wife. (Tr. 39.) He said that he has a driver's license and drove to the hearing and that he worked as a manager in a landscaping company, a bank executive, a forklift operator, and a real estate agent. (Tr. 40-41.)

The plaintiff explained that he stopped working in 2006 due to back and knee pain. (Tr. 42.) He said that his doctors prescribe him pain medicine and muscle relaxers and that the medicines "take[] the edge off" but do "[n]ot totally" relieve his pain and cause drowsiness, nausea, and dizziness. (Tr. 42-43, 50.) He said that he had received injections in the past but that, although the injections relieved his pain for approximately three months, he stopped taking them because of the risk of paralysis. (Tr. 43.) He testified that he went to physical therapy "four or five times" for six to eight weeks at a time but that it did not help (tr. 50-51) and that he started using a cane

approximately six months before the hearing.  (Tr. 53.)  He also testified that he has pain in his hip, groin, and knee as well as atrial fibrillations, shortness of breath, and chest pain.  (Tr. 47-49, 52-53.)  The plaintiff testified that on good days he can lift twenty pounds without "repercussions" but that on bad days he cannot stand up straight even after taking pain medicine.  (Tr. 44.)  He said that he is not comfortable sitting or walking but that lying down reduces his pain somewhat.  (Tr. 45-46.)  He related that his wife cleans, cooks, shops, and washes dishes and laundry and that he needs her help to cut his toenails because he cannot bend over to reach them.  (Tr. 47.)

When asked by his attorney whether his pain "caused any problems as far as [his] mental . . . ability to focus [or] concentrate," the plaintiff responded that:

> It depends.  If I, if I don't take pain medicine then I'm very short with people.  I'm very edgy, agitated.  I mean it's like somebody's poking me with a sharp stick all the time.  I'm not a fun person to be around when I'm in pain.  I mean I'm even short with my wife, and I realize it.  I don't want to be, you know, but I am.  It's just the way it is.  So it's kind of, you know – it's a hard choice, because if I take the pain medicine of course, you know – I cant [*sic*] take a Lortab and I'm not in a lot of pain.  But I don't know if you've ever seen anybody or taken one, but I mean you, you're not – there's not much you can do if you take Lortab except lay on the couch like a dead fish, you know?

(Tr. 49-50.)  The plaintiff also testified that he suffers from depression and that he takes antidepressant medication.  (Tr. 51.)  He said that his depression stemmed from a frustration over not being able to work.  (Tr. 51-52.)

The VE classified the plaintiff's past job as an insurance agent as light, skilled work; his past job as a real estate agent as light, skilled work; his past job as a manager of a commercial bank as sedentary, skilled work; and his past job as a forklift operator as medium, semi-skilled work.  (Tr. 54.)  The ALJ asked the VE whether a hypothetical person with the plaintiff's age, education, and work experience would be able to obtain work if he were able to sit up to six hours and stand

and walk 4-6 hours in an eight-hour workday; lift 20 pounds occasionally and 10 pounds frequently; push or pull to those weights; occasionally crawl, squat, stoop, bend, and climb; concentrate for extended periods of time; respond appropriately to routine changes in the work environment; and perform detailed tasks. (Tr. 55.) The VE replied that a person with these limitations could perform the plaintiff's past relevant work as a bank manager. *Id.* In response to questioning by the plaintiff's attorney, the VE testified that a person who "would be expected to be off task more than 18 percent of the work day due to pain or medication side effects" would not be able to work as a bank manager. *Id.* The VE also testified that the job would not be available to someone who needed to miss at least three days of work per month or who could not sit or stand in combination for at least eight hours in a workday. (Tr. 55-56.)

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on August 24, 2010. (Tr. 23-31.) Based upon the record, the ALJ made the following findings:

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 29, 2006 through his date last insured of December 31, 2007 (20 CFR 404.1571 *et seq.*).

***

3.  Through the date last insured, the claimant had the following severe impairments: herniated discs in neck, disorder of back, hip pain, and arthritis in knees (20 CFR 404.1520(c)).

***

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the ability to sit for 6 hours in an 8-hour workday. He can stand/walk for 4 to 6 hours in an 8-hour workday. He is able to lift 20 pounds occasionally and 10 pounds frequently. He can occasionally crawl, squat, stoop, bend and climb. From a mental standpoint, he retains the ability to concentrate for extended periods of time. He can respond appropriately to routine changes in the work environment. He can perform detailed tasks.

\*\*\*

6. Through the date last insured, the claimant was capable of performing past relevant work as a bank manager. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\*\*\*

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 29, 2006, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(f)).

(Tr. 25-31.)

## IV. DISCUSSION

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must

be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he

seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that he meets or equals a listed impairment,

and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his past relevant employment, the burden of production shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. 20 C.F.R. § 404.1512(g); 68 Fed. Reg. 51153, 51154-55 (Aug. 6, 2003). *See also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden

under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B. The Five-Step Inquiry

In this case, the ALJ resolved the plaintiff's claim at step four of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured. (Tr. 25.) At step two, the ALJ determined that the plaintiff had the following severe impairments: "herniated discs in neck, disorder of back, hip pain, and arthritis in knees." *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25-27.) At step four, the ALJ determined that the plaintiff was able to perform his past relevant work as a bank manager. (Tr. 30.)

**C. The Plaintiff's Assertions of Error**

The plaintiff presents new evidence in the form of a letter by Dr. Looney (Docket Entry No. 15-1) submitted after the ALJ's decision and argues that his case should be remanded for the ALJ to consider the letter. Docket Entry No. 15, at 10-12. The plaintiff also argues that the ALJ erred by not including moderate limitations in the areas of concentration, persistence, or pace in either his hypothetical question to the VE or RFC determination. *Id.* at 8-10. Finally, the plaintiff argues that the ALJ erred by applying the incorrect legal standard when evaluating his subjective complaints of pain. *Id.* at 12-13.

**1. A sentence six remand under 42 U.S.C. § 405(g) is inappropriate to consider the new evidence provided to the Court.**

The plaintiff argues that remand is appropriate to consider a letter from Dr. Looney (Docket Entry No. 15-1) that the plaintiff attached to his memorandum. Docket Entry No. 15, at 10-12. The letter, which is dated November 19, 2012, was written after the ALJ's decision and the Appeals Council's order denying the plaintiff's request for review.

In the letter, Dr. Looney reiterated the exam findings and diagnoses from his consultation with the plaintiff on August 27, 2008, and opined that the plaintiff had "fairly severe arthritis in [his] hip" as of December 31, 2007. Docket Entry No. 15-1. He opined that the plaintiff would "most likely not" have been able to sit or stand for eight hours in a workday since April 2006; that "it would have been difficult for [the plaintiff] to lift 20 pounds occasionally and 10 pounds frequently, [and] to crawl, squat, stoop, bend, or climb;" and that he "most likely" would have needed to take frequent breaks and absences from work. *Id.* Dr. Looney opined that he "doubt[ed] [the plaintiff]

will ever be able to work full time" without undergoing an arthroplasty, which he indicated would "address [the] problem" and "improve his quality of life and . . . ability to function in the workplace." *Id.*

Newly submitted evidence that is not reviewed by the Commissioner can only be considered with a sentence six remand under 42 U.S.C. § 405(g). The Court can require an ALJ to consider additional evidence on remand only if the plaintiff shows that the evidence is "new" and "material," and provides "good cause" for failing to include the evidence in the record prior to the ALJ's decision. 42 U.S.C. § 405(g). *See also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). As the Sixth Circuit has explained, "[f]or the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Further, new evidence is "'material' only if there is a reasonable possibility that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence," *Foster*, 279 F.3d at 357 (citing *Sizemore*, 865 F.2d at 711), and "good cause" can be shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam)).

The Court concludes that the plaintiff is not entitled to a sentence six remand. Assuming *arguendo* that Dr. Looney's letter is new and material,[2] a sentence six remand is not appropriate because the plaintiff has not carried his burden of demonstrating good cause for failing to present the evidence to the ALJ. Dr. Looney's letter concerns the plaintiff's condition from April 2006 until December 31, 2007, and the details of an examination in August 2008, nearly two years before the ALJ's decision. The facts and issues in the plaintiff's case were the same before and after the ALJ's decision, and the plaintiff has not provided any good reason why he could not have obtained an opinion from Dr. Looney regarding his functional limitations before the ALJ entered his decision. The plaintiff argues that the letter is "Dr. Looney's response from reading" the ALJ's decision and thus could not have been produced earlier. Docket Entry No. 15, at 12. The plaintiff's logic is circular and does not establish good cause. The plaintiff cannot sit back and wait for the ALJ's decision and then obtain a medical opinion more favorable to his claim. To allow the plaintiff to do so would result in a never-ending cycle whereby the ALJ's decision would be subject to reconsideration whenever the plaintiff could obtain a contrary medical opinion. Dr. Looney's letter relates to his treatment of the plaintiff during the relevant period of disability, and the ALJ specifically considered the medical evidence from Dr. Looney in reaching his decision. (Tr. 29.) The plaintiff has not demonstrated good cause for failing to obtain the letter prior to the ALJ's decision, and, accordingly, a sentence six remand is not appropriate.

---

[2] The defendant concedes that Dr. Looney's letter is material. *See* Docket Entry No. 16, at 16 n.3.

**2. The ALJ did not err in posing a hypothetical question to the VE or determining the plaintiff's RFC.**

The plaintiff argues that the ALJ erred when posing a hypothetical question to the VE and that, consequently, the ALJ's reliance on the VE's testimony at step four is not supported by substantial evidence. Docket Entry No. 15, at 8-10. Specifically, the plaintiff finds fault with the ALJ's decision not to include moderate limitations in the areas of concentration, persistence, or pace in his hypothetical question to the VE or RFC determination.

The ALJ assessed the severity of the plaintiff's mental limitations at steps two and three by applying the "special technique" outlined at 20 C.F.R. § 404.1520a.[3] (Tr. 26-27.) In determining the plaintiff's limitations according to the "paragraph B" criteria found at 20 C.F.R. § 404.1520a(c)(3), the ALJ found that the plaintiff has moderate difficulties in the areas of concentration, persistence, or pace. (Tr. 26.) However, the ALJ did not include moderate limitations in these areas when posing a hypothetical question to the VE and in fact asked the VE to consider a person who could "concentrate for extended periods of time, respond appropriately to routine changes in the work environment, and . . . perform detailed tasks." (Tr. 55.) The VE testified that a person with these limitations could perform the plaintiff's past relevant work as a bank manager

---

[3] The special technique is a series of steps delineated in subsections (b) through (e) of 20 C.F.R. § 404.1520a for assessing the severity of a mental impairment. As part of applying the special technique, the ALJ must rate the plaintiff's functional limitations in the following four areas, known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). "If the ALJ rates the first three functional areas as 'none' or 'mild' and the fourth area as 'none,' the impairment is generally not considered severe and the [plaintiff] is conclusively not disabled." *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 653 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1520a(d)(1)). If the impairment is severe, the ALJ "will then determine if it meets or is equivalent in severity to a listed mental impairment," and, if it does not, then the ALJ will move on to assess the plaintiff's RFC. 20 C.F.R. § 404.1520a(d)(2)-(3).

because it was "skilled and detailed work." *Id.* The ALJ's RFC determination mirrors his hypothetical question to the VE, and the ALJ relied on the VE's testimony in finding at step four that the plaintiff could perform his past relevant work. (Tr. 27, 30.)

Although the plaintiff contends that it is "internally inconsistent" for the ALJ to find at steps two and three that he has moderate mental limitations yet later conclude that he can perform skilled, detailed work (Docket Entry No. 15, at 9), the Court is not persuaded. The plaintiff's argument equates the ALJ's "paragraph B" findings with an RFC finding. However, the ALJ specifically provided that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process" and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental listings[.]" (Tr. 26-27.)

After making findings regarding the "paragraph B" criteria, the ALJ found that the plaintiff's mental impairments did not meet or equal a listed impairment. *Id.* The ALJ then assessed the plaintiff's RFC. *See* 20 C.F.R. § 404.1520a(d)(3) ("If we find that you have severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."). These are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step.

In determining the plaintiff's RFC, the ALJ reviewed the evidence regarding the plaintiff's alleged mental impairments but found that he could perform the specific functions outlined in the RFC. The ALJ noted that, although the plaintiff reported having depression, "no symptoms of

17

depression appear to be provided by treating physicians" and that his "doctors apparently relied quite heavily" on the plaintiff's subjective reports of symptoms. (Tr. 29.) The ALJ also considered the possible side effects of medication, noting the plaintiff's reports that he was "drowsy, sleepy, dizzy, and sick to his stomach" after taking pain medication. (Tr. 28, 30.) However, the ALJ did not find the plaintiff to be entirely credible, noting that he had driven to the hearing and was able to respond to questions despite having taken pain medicine that day. (Tr. 30.) The medical record contains very little, if any, support for limitations in the areas of concentration, persistence, or pace, and the ALJ determined that the plaintiff has the mental abilities outlined in his RFC.

A VE's testimony is commonly used at step four in the sequential analysis to determine whether a plaintiff is capable of performing his past relevant work. *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 548 (6th Cir. 2002). The VE's testimony in response to an ALJ's hypothetical question will be considered substantial evidence only if the hypothetical question "accurately portrays [the plaintiff's] individual physical and mental impairments.'" *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Although a hypothetical question must accurately portray a plaintiff's impairments, an ALJ "is required to incorporate only those limitations that he accepts as credible." *Id.* (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). It is the plaintiff's burden at step four to prove that he is unable to perform past relevant work or that a particular past job should not be considered relevant. *Cruse,* 502 F.3d at 539; *Jones,* 336 F.3d at 474.

In determining the plaintiff's RFC, the ALJ found that he retained the ability to concentrate for extended periods of time; respond appropriately to routine changes in the work environment; and

perform detailed tasks. (Tr. 27.) The ALJ's hypothetical question to the VE includes these limitations and is thus an accurate portrayal of the plaintiff's impairments. Although the plaintiff argues that the ALJ should have included moderate limitations in the areas of concentration, task performance, and pace, the ALJ did not find that these impairments were credible and was thus not required to include them in a hypothetical question. *See Griffeth*, 217 Fed. Appx. at 429. The ALJ's reliance on VE testimony at step four to find that the plaintiff is able to perform his past job as a bank manager is supported by substantial evidence in the record.

### 3. The ALJ did not apply an incorrect legal standard when evaluating the plaintiff's complaints of pain.

The plaintiff argues that the ALJ applied the wrong legal standard in evaluating his subjective complaints of pain. Docket Entry No. 15, at 12-13. In evaluating the plaintiff's allegations of pain, the ALJ cited *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994), for the proposition that "[p]ain constitutes a disabling condition when it is constant, unremitting, and wholly unresponsive to treatment." (Tr. 30.) The plaintiff contends that "this standard is foreign to established Sixth Circuit law" (Docket Entry No. 15, at 12) but does not explain how the standard differs from that used in the Sixth Circuit.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186. *See also Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit set forth the basic

standard for evaluating such claims.[4]  The *Duncan* test has two prongs.  The first prong is whether there is objective medical evidence of an underlying medical condition.  *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853).  The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."  *Id.*

Initially, the Court notes that the ALJ did not evaluate the plaintiff's subjective complaints under any "standard" enunciated in *Falco* as the plaintiff contends, but merely cited *Falco* as additional support for his conclusions.  The ALJ did not specifically cite *Duncan* in his analysis but noted that he evaluated the plaintiff's symptoms under the requirements set forth in 20 C.F.R. § 404.1529 and Social Security Rulings 96-4p and 96-7p. (Tr. 27.)  The Sixth Circuit has held that "analysis under these regulations is not inconsistent with the standards . . . set forth in *Duncan*" and that "an ALJ who follows the requirements of 20 C.F.R. § 404.1529 does not commit error by failing to explicitly follow *Duncan*."  *Pasco v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 828, 835 (6th Cir. 2005) (citing *Baranich v. Barnhart*, 128 Fed. Appx. 481, 483 (6th Cir. 2005); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995)).  Accordingly, the Court concludes that the ALJ applied the correct legal standard when evaluating the plaintiff's subjective complaints of pain.

---

[4] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n.2.

## IV. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the record (Docket Entry No. 14) be DENIED and that the Commissioner's decision be affirmed.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,


JULIET GRIFFIN
United States Magistrate Judge